DECISION
{¶ 1} Relator, Allan J. McKenzie ("relator") commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's application for permanent total disability ("PTD") compensation, and also ordering the commission to find that relator is entitled to that compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion in denying relator's application for PTD compensation and recommended that this court deny the requested writ of mandamus. Relator filed objections to the magistrate's decision, and the commission filed a memorandum opposing the objections. This cause is now before the court for a full evaluation of the merits.
 {¶ 3} Relator objects to the magistrate's rejection of his argument that Ms. Rankin's report is internally inconsistent because in one instance the report states that relator has transferable skills and in another instance it states that relator has no skills transferable to sedentary employment. We overrule relator's objection for two reasons.
 {¶ 4} First, a review of the Rankin report reveals that the list of transferable skills noted by Ms. Rankin is not at all contradictory to, or inconsistent with, the statement that relator lacks "transferable skills to the sedentary level." The transferable skills listed are those such as taking and giving instructions, setting up and operating machines and equipment, manipulating tools and devices, placing materials in machines and removing materials from machines, and using hand tools. These skills are clearly related to relator's work history in the non-sedentary jobs of laborer and chemical mixer. Therefore, the statement that relator lacks skills transferable to sedentary employment does not render the report internally inconsistent and ineligible for consideration by the commission.
 {¶ 5} Second, as the magistrate explained, the commission was free to rely on some of Ms. Rankin's findings and not on others. Indeed, the commission did not need to rely at all on Ms. Rankin's report because the commission is the exclusive evaluator of disability. State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266, 270, 680 N.E.2d 1233.
 {¶ 6} Having undertaken a review of relator's objections, considered the arguments of the parties, and independently appraised the record, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
French and McGrath, JJ., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Allan J. McKenzie, : Relator, : v. : No. 05AP-1309 Imperial Adhesives, Inc., and Industrial : (REGULAR CALENDAR) Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 28, 2006 William D. Snyder Associates, and Greg Claycomb;Butkovich, Crosthwaithe Gast, and Stephen P. Gast, for relator.
Dinsmore Shohl, and Gary E. Becker, for respondent Imperial Adhesives, Inc.
Jim Petro, Attorney General, and Sandra E. Pinkerton, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 7} Relator, Allan J. McKenzie, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.
Findings of Fact:
 {¶ 8} 1. Relator sustained a work-related injury on July 23, 1987, and his claim has been allowed for the following conditions: "strain low back; somatoform pain disorder; dysthymic disorder."
 {¶ 9} 2. Relator filed an application for PTD compensation on April 7, 2004. At the time that he filed the application, relator was 55 years old, indicated that he had completed the 11th
grade in 1964, and that he had not obtained a GED. Relator left school after his mother died so he could go to work. Relator indicated that he could read, write and perform basic math, but not well. Relator further indicated that he had participated in two different rehabilitation programs and listed his previous occupations as a laborer and a mixer.
 {¶ 10} 3. In support of his application for PTD compensation, relator attached the July 15, 2002 and March 9, 2004 reports of his treating physician, Dr. Daniel Buchanan. In his July 2002 report, Dr. Buchanan opined that relator had reached maximum medical improvement ("MMI") and assessed a 15 percent whole person impairment. In his March 2004 report, Dr. Buchanan opined that relator was permanently and totally disabled from all forms of sustained remunerative employment based upon his allowed physical conditions.
 {¶ 11} 4. Relator was also examined by Dr. Ron M. Koppenhoefer. In his May 26, 2004 report, Dr. Koppenhoefer noted that relator attempted to return to work in 1988 but was only able to do so for two weeks because of an increase in back pain. Dr. Koppenhoefer noted that relator had been off work since and that his medical treatment had been conservative in nature. Following a recitation of his physical findings and list of medical records reviewed, Dr. Koppenhoefer opined that relator had reached MMI, assessed a five percent whole person impairment, and concluded that relator would be able to perform sedentary to light-duty work activities.
 {¶ 12} 5. Dr. Donald J. Tosi, examined relator with regard to his allowed psychological conditions. In his May 31, 2004 report, Dr. Tosi concluded that relator's allowed psychological conditions had reached MMI, assessed a 28 percent whole person impairment, and concluded that relator would be able to return to his former position of employment or any other employment for which he was otherwise qualified.
 {¶ 13} 6. A vocational evaluation was prepared by Dr. Kenneth J. Manges, and dated July 17, 2004. Dr. Manges concluded that, at age 56, relator was considered a person of advanced age. Dr. Manges concluded that relator had 35 percent impairment due to his psychological depression and that, compounded by his physical pain, he was unemployable at all work for the foreseeable future due the combined affects of his physical and psychological conditions. Furthermore, even though independent medical exams showed that relator has some residual capacity to perform some work, Dr. Manges concluded that relator's psychological difficulties would preclude his reliable and consistent performance.
 {¶ 14} 7. Relator participated in vocational services through the Parmen Group and was evaluated by Diane C. Rankin. In her January 5, 2004 report, Ms. Rankin set forth the results of certain testing which was administered. Specifically, she noted that relator's testing results were in the borderline to low average range. Relator scored an 89 on the Slosson Intelligence Test which indicates a low average estimated IQ. On the Wide Range Achievement Test, relator scored at the fourth grade level for reading, the fifth grade level for spelling, and the sixth grade level for math. Relator did demonstrate an average ability to follow oral directions and fair accuracy on a subtest of the Clerical Abilities Battery. Relator's fine finger dexterity and gross motor hand function were judged to be borderline to below average based upon his performance on the Crawford Small Parts Test. With regards to retraining, Ms. Rankin stated as follows:
Considering Mr. McKenzie's test results, lack of transferable skills to the sedentary level, lack of a GED or diploma and low academic abilities, it is this vocational specialist's opinion that he is a poor candidate for re-training. Most retraining programs require a GED or high school level academics. Those that do not require a high school diploma, require greater physical abilities to stand, bend and lift; such as food services or janitorial/building maintenance training. While Mr. McKenzie may be a candidate for CDL license training, it appears doubtful that he could tolerate the physical demands of driving for long periods.
With regards to employment opportunities, Ms. Rankin noted further as follows:
Considering Mr. McKenzie's limitations, his employment opportunities will be limited to the following categories: sedentary, sit/stand cashier, parking lot attendant, light courier — (if released by his physician at this level), and driver-/chauffer. Mr. McKenzie expressed that his mental health issues would not allow him to handle the stress of working in a security guard position where he would be expected to appropriately confront other individuals.
Ms. Rankin then listed the following jobs which she recommended based upon relator's test results, work history, interest, and current physical capacities:
 CHANGE-BOOTH CASHIER BENCH ASSEMBLER FILM CUTTER FILM SORTER PARKING-LOT ATTENDANT COURIER (clerical)*
(* — This is a light level position which Mr. McKenzie would need to be released by his physician to perform.)
Ms. Rankin noted the following vocational strengths: relator was able to follow oral directions at an average level, has a valid driver's license, has no adult criminal record, and was able to solve simple math problems such as change making, accurately and without assistance. Ms. Rankin listed the following as vocational barriers: relator continues to complain about pain relative to both his allowed conditions and other health problems, relator did not graduate from high school and has not attained a GED, relator has not worked since 1987, demonstrates borderline academic abilities, relator lacks basic computer/keyboarding skills, relator's fine finger dexterity and hand function is in the borderline to low average range, although he has repeatedly expressed a desire for retraining, he has not explored alternative vocational goals, is currently receiving social security disability benefits which could be a barrier to his return to work, and lacks reliable transportation. Ms. Rankin did note several transferable skills which she believed relator had acquired.
 {¶ 15} 8. Relator's application was heard before a staff hearing officer ("SHO") on August 30, 2004. The SHO denied relator's application. Specifically, the SHO relied upon the medical reports of Drs. Koppenhoefer and Tosi and found that relator could return to sedentary to light duty work. Thereafter, the SHO summarized Ms. Rankin's vocational report and then provided the following analysis of the nonmedical disability factors:
The Staff Hearing Officer finds that the injured worker was 55 years of age at the time that he filed this application, has an 11th grade education without obtaining a GED and work experience as a chemical mixer and laborer. The Staff Hearing Officer finds that the injured worker's age is not a barrier which would prevent him from adapting to new work rules, processes, methods, procedures and tools involved in a new occupation. The Staff Hearing Officer further finds that at age 55, the injured worker is reasonably competitive with others for employment opportunities. The Staff Hearing Officer further finds that the injured worker's education does not accurately reflect his academics functioning. Based on the testing results reported by Ms. Rankin, the Staff Hearing Officer finds that the injured worker has marginal to limited educational abilities. The Staff Hearing Officer finds that such academic profile would present the injured worker with barriers in obtaining employment requiring the ability to read or write. However, the Staff Hearing Officer finds that the injured worker's academic abilities are sufficient to enable him to access unskilled, entry level employment in sedentary and light duty levels of strengths. The Staff Hearing Officer further finds that the injured worker's work history did not present him with transferable work skills to other occupations. However, the Staff Hearing Officer finds that the injured worker would be reasonably capable of accessing unskilled, entry-level occupations. Considering the injured worker's age, education and work experience in conjunction with his ability to perform light duty and sedentary employment, the Staff Hearing Officer finds that the injured worker would be capable of performing the occupations identified in the vocational assessment of Ms. Rankin, such as: change booth cashier, bench assembler, film cutter, film sorter, parking lot attendant, and courier. Accordingly, the application for Permanent and Total Disability Compensation is denied. This order is based on the medical reports of Dr. Koppenhoefer and Dr. Tosi and vocational report of Ms. Rankin.
 {¶ 16} 9. Relator filed an application for reconsideration and argued that the SHO misread Ms. Rankin's vocational report and asserted that she actually opined that relator could not be re-employed.
 {¶ 17} 10. Relator's application for reconsideration was denied by order of the commission mailed October 29, 2004.
 {¶ 18} 11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 20} The relevant inquiry in a determination of PTD is claimant's ability to do any sustained remunerative employment.State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record, and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 21} Relator does not challenge the commission's reliance upon the medical reports of Drs. Koppenhoefer and Tosi except to note that the commission ignored his medical evidence. Relator asserts that there is no competent credible evidence cited which would support the finding that relator is capable of sedentary sustained remunerative employment. This magistrate disagrees.
 {¶ 22} First, upon review of the medical reports of Drs. Koppenhoefer and Tosi, the magistrate finds that there is no flaw or defect on the face of those reports and that they constitute some evidence upon which the commission relied to find that relator could perform at a sedentary to light duty exertional level and that, from a psychological standpoint, relator could perform some work as well. This matter really comes down to whether or not the commission's analysis of nonmedical disability factors was sufficient and, for the following reasons, this magistrate finds that it was. In the present case, the SHO did rely upon the vocational report of Ms. Rankin. Ms. Rankin did conclude that relator would not be a good candidate for vocational retraining; however, she also concluded that, in her opinion, relator did have some employment opportunities. Furthermore, Ms. Rankin listed specific jobs which she believed relator would be able to perform. As such, the magistrate finds that, contrary to relator's arguments, the commission did not misread the vocational report of Ms. Rankin.
 {¶ 23} Furthermore, the magistrate concludes that the commission's analysis of the nonmedical disability factors does meet the requirements of Noll and its progeny. The commission noted that relator was 55 years old when he filed his application for PTD compensation and that his age was not a barrier which would prevent him from adapting to new work rules, processes, methods, procedures, and tools involved in a new occupation. Furthermore, the commission found that, at age 55, relator was still reasonably competitive with others for employment opportunities. With regards to relator's educational abilities, the commission noted that his level of education does not accurately reflect his academic functioning. The commission specifically agreed with the results reported by Ms. Rankin that relator has marginal to limited educational abilities. While the commission found that his academic profile would present him with barriers to obtain employment requiring the ability to read or write, the commission found that his academic abilities were sufficient to permit him to access unskilled, entry-level employment in sedentary and light-duty jobs. With regard to relator's prior work history, the commission disagreed with Ms. Rankin's determination that relator had transferable skills to other occupations. However, the commission found that that would not be a barrier to his ability to access unskilled, entry-level occupations. Furthermore, the commission listed the jobs identified by Ms. Rankin as jobs which the commission believed relator would be able to perform.
 {¶ 24} First, relator argues that the commission wrongfully ignored the vocational evidence presented by relator and, instead, generated its own conclusions. However, it has been held that the commission is the sole evaluator of the nonmedical disability factors and the commission may reject any or all vocational reports. In fact, expert vocational evidence is not even required because the commission is considered to be the expert on disability. See State ex rel. Ewart v. Indus. Comm.
(1996), 76 Ohio St.3d 139, and State ex rel. Jackson v. Indus.Comm. (1997), 79 Ohio St.3d 266.
 {¶ 25} Second, relator argues that the commission failed to provide an adequate explanation of the nonmedical disability factors. Relator cites two cases to demonstrate that the commission's explanation is inadequate. In State ex rel. Harschv. Indus. Comm. (1998), 83 Ohio St.3d 280, the commission had denied wage loss compensation to the claimant based upon a finding that the claimant had not conducted a good-faith job search premised upon the sole statement that contacting five potential employers per week is not sufficient. The Supreme Court of Ohio granted a writ of mandamus on the basis that the commission's explanation was too brief to justify the denial of wage loss compensation. Relator also cites State ex rel.Kinnebreu v. Clinic Ctr. Hotel (1998), 80 Ohio St.3d 688, wherein the commission had denied the claimant PTD compensation. In that case, the commission only noted that the claimant was 60 years old, had an 11th grade education, and had worked as a maid and housekeeper. No other analysis was provided at all.
 {¶ 26} The commission's order in the present case is not deficient as were the orders in both the Harsch and Kinnebreu
cases. In the present case, the commission did cite the evidence upon which it relied and did give an explanation. In some respects, the commission noted that it agreed with the conclusions and analysis provided in Ms. Rankin's report. In other regards, the commission noted that it did not agree with the conclusions reached by Ms. Rankin. However, ultimately, the commission provided its own analysis and found that relator was capable of performing some sedentary to light-duty work and the commission even listed certain jobs which it believed that relator could perform. This analysis does meet the requirements of Noll and its progeny and relator's argument fails.
 {¶ 27} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for permanent total disability compensation and relator's request for a writ of mandamus should be denied.